UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERICK ELLIS,

                      Plaintiff,

       -against-

KYOUNG KIM, ROBERT BENTIVEGNA, and LEWIS BOYD

                      Defendants.

**OPINION & ORDER**

23-CV-05309 (PMH)

PHILIP M. HALPERN, United States District Judge:

Erick Ellis ("Plaintiff") brings this action *pro se* and *in forma pauperis* against Kyoung Kim, Robert Bentivegna, and Lewis Boyd ("Defendants"), asserting claims for relief under 42 U.S.C. § 1983 predicated upon violations of his First and Eighth Amendment rights.

Plaintiff commenced this action on June 21, 2023. (Doc. 1). Defendants filed a motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on March 1, 2024. (Doc. 22; Doc. 23, "Def. Br."). Plaintiff filed his memorandum of law in opposition on May 3, 2024. (Doc. 26, "Pl. Br."). Defendants filed their reply on May 15, 2024 (Doc. 27), and Plaintiff filed, with the Court's permission, a sur-reply and affidavit in support of his sur-reply on July 15, 2024 (Doc 31).[1]

---

[1] Given the liberality afforded pro se litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings . . . .'" (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005))). Accordingly, the Court considers on this motion the additional allegations relevant to this motion in Plaintiff's opposition and sur-reply. However, the Court will not consider allegations relating to other matters unrelated to the facts and circumstances of this case. Therefore, the Court will not, at this juncture, consider the medical records attached to the sur-reply (Doc. 31) as none are referenced, integral, and/or attached to the Complaint.

For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff is incarcerated at Green Haven Correctional Facility and suffers from several medical conditions. Plaintiff alleges that from 2014-2019 he suffered "pain and discomfort to his stomach," "shortness of breath," and an "inability to hold food in his system." (Compl. ¶ 5). He was diagnosed with a hernia in 2014. (*Id.* ¶ 6). Around that period, Plaintiff was assigned Defendant Kim as his healthcare provider. (*Id.* ¶ 7). Defendant Kim, since then, has "ordered" Plaintiff to take a blood thinner medication. (*Id.* ¶ 10). Plaintiff alleges that this medication delayed a procedure to treat his hernia. (*Id.* ¶ 11). Plaintiff also alleges that different treating physicians recommended that he stop taking the blood thinner medication. (*Id.* ¶¶ 9, 11). Plaintiff shared this recommendation with Defendant Kim, who, as alleged, declined to follow this differing advice. (*Id.* ¶ 10). Defendant Kim allegedly also "refused to clear" Plaintiff for surgery to address his hernia because Plaintiff has diabetes. (*Id.* ¶ 13). In May 2018, another physician told Plaintiff that his "pain and discomfort may be due to the stint placed in his heart[]." (*Id.* ¶ 18). Plaintiff, as alleged, never received treatment for the stint. In May 2019, Plaintiff "received [] hernia surgery." (*Id.* ¶ 21).

On March 10, 2021, Plaintiff "received oral surgery" to treat "pain," "discomfort," and "swelling" in his gums and mouth. (*Id.* ¶¶ 22, 25). Plaintiff, later that evening, "experienc[ed] excruciating pain and discomfort, as well as profuse[] bleeding in his mouth." (*Id.* ¶ 25). The next day, Plaintiff was transferred to Westchester hospital to "treat[] [him] for his pain and discomfort and repeated bleeding." (*Id.* ¶ 26). Plaintiff alleges that Defendant Kim's decision to continue to treat Plaintiff with blood-thinner medication caused the pain and profuse bleeding. (Pl. Br. at 6).

2

On April 23, 2021, Plaintiff received a "hermorrholdectomy" (herein called, a "hemorrhoidectomy")[2] procedure. (Compl. ¶ 27). After the surgery, Plaintiff was "ordered" by his treating physician "not to do any lifting." (*Id.*). Plaintiff told Defendant Boyd, a correctional officer, about this recommendation from his treating physician. (*Id.* ¶ 28). Defendant Boyd, as alleged, ignored this medical recommendation—telling Plaintiff, "I don't care what surgery you just had." (*Id.*). Defendant Boyd then ordered Plaintiff to "pick up" his mattress and "walk [it] through [a] metal detector." (*Id.*). Plaintiff alleges after he lifted his mattress, he "felt a popping sensation" and "extreme pain." (*Id.*). That same day, Plaintiff was transferred to "Putman County Hospital" to treat this injury. (*Id.* ¶ 29). Plaintiff stayed "approximately six days" at the hospital. (*Id.*).

Since Plaintiff was assigned Defendant Kim as a treating physician, Plaintiff has filed "medical complaints" about him to his "supervis[or]," Defendant Bentivegna. (*Id.* ¶¶ 8, 18-19, 31-32). As alleged, Defendant Bentivegna took no action in response to Plaintiff's complaints. (Pl. Br. at 7-9). Plaintiff, during this time, also filed "numerous grievances against" Defendants Kim and Bentivegna. (*Id.* at 9).

## STANDARD OF REVIEW

I. Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action when the district court lacks the statutory or constitutional power to adjudicate it."

---

[2] Given Plaintiff's description of the procedure and related injuries, the Court presumes that he meant to allege that he received a "hemorrhoidectomy," which is a "surgery to remove internal or external hemorrhoids that are extensive or severe." *Troya v. Wilson*, No. 17-CV-00162, 2019 WL 535750, at *6 n.9 (S.D. Ind. Feb. 11, 2019), *aff'd*, 807 F. App'x 556 (7th Cir. 2020); *accord Harris v. Wexford Health Sources, Inc.*, No. 19-CV-00296, 2020 WL 833091, at *1 (D. Md. Feb. 20, 2020), *aff'd*, 822 F. App'x 245 (4th Cir. 2020).

*Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019).[3] "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.   Rule 12(b)(6) Standard

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the

strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff proceeds under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)).

I.  Eleventh Amendment Immunity

Plaintiff asserts that his claims are against "all defendants" both "in their personal and official capacity." (Compl. at 1 (modified to lowercase)).[4] Insofar as Plaintiff intends to press claims against Defendants in their official capacities under 42 U.S.C. § 1983, those claims must be dismissed by operation of the Eleventh Amendment.

The Eleventh Amendment directs that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This language bars suits, even those arising under federal law, against a state, or against a state employee acting in his or her official capacity, by one of its own citizens. *Woods*

---

[4] Citations to specific pages of the Complaint and other filings on the docket correspond to the pagination generated by ECF.

*v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("A suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself.").

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-07953, 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original)). To that point, it is well-settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-00927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment.").

Because the Eleventh Amendment deprives this Court of subject-matter jurisdiction and neither exception applies, the claims for relief under 42 U.S.C. § 1983 are dismissed under Rule 12(b)(1) to the extent they seek relief against Defendants in their official capacities. This result does not affect the 42 U.S.C. § 1983 claims against Defendants in their individual capacities. The Court therefore considers Defendants' arguments for dismissal of those claims for relief under Rule 12(b)(6).

II.   <u>Plaintiff's First, Third, Fourth, and Sixth Claims for Relief: Deliberate Indifference to Serious Medical Needs</u>

Plaintiff presses four claims for deliberate indifference to serious medical needs against all Defendants in violation of the Eighth Amendment. (Compl. at 10-11).

As an initial matter, Defendants argue that Plaintiff's claims against Defendants Kim and Bentivegna for deliberate indifference concerning conduct from 2014-2019 (Compl. ¶¶ 5-21) are time-barred by the applicable statute of limitations. (Def. Br. at 11-13). Plaintiff, in his opposition brief, does not oppose this argument, instead asserting that he "will seek to amend his complaint, where medical claims pre-dating June 6, 2020, will not be addressed." (Pl. Br. at 4).[5]

"Claims under § 1983 are governed by a three-year statute of limitations in New York." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015). Deliberate indifference claims "generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim." *Holliday v. C.O. Artist*, No. 23-CV-02410, 2024 WL 2882938, at *3 (S.D.N.Y. June 7, 2024). "[U]nder the prison mailbox rule, the date of filing is deemed to be the date that the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumed to be the date that the complaint was signed." *Crichlow v. Doccs*, No. 18-CV-03222, 2022 WL 6167135, at *2 (S.D.N.Y. Oct. 7, 2022); *see also Walker v. Jastremski*, 430 F.3d 560, 561 (2d Cir. 2005) (explaining prison mailbox rule). Plaintiff alleges, from 2014-2019, he suffered "pain and discomfort to his stomach, as well [as] shortness of breath." (Compl. ¶ 5). In 2014, he was diagnosed with a hernia. (*Id.* ¶ 6). In 2018, another treating physician suggested that his pain and discomfort was due to a "stint placed in his heart[]." (*Id.* ¶ 18). As alleged, Defendants Kim

---

[5] To the extent Plaintiff seeks leave to amend, and given the rulings made herein, the application is denied as futile. *See Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (explaining that "leave to amend is not necessary when it would be futile"). Amending the Complaint to eliminate allegations that are time-barred adds nothing to Plaintiff's Complaint and would be a futile exercise.

and Bentivegna failed, from 2014-2019, to provide him adequate care to ameliorate any of these medical conditions. (*Id.* ¶¶ 7-21). Plaintiff signed his Complaint on June 6, 2023—more than three years after Plaintiff discovered the existence of his hernia and potential complications from his stint. Plaintiff has not alleged or argued that he is entitled to an exception to the general statute of limitations period. Indeed, Plaintiff appears to acknowledge that such claims are time-barred. (Pl. Br. at 4). Accordingly, Plaintiff's Eighth Amendment claims are dismissed to the extent that those claims are based on alleged acts of deliberate indifference before June 6, 2020.

As for Plaintiff's timely, deliberate indifference allegations, "[t]he Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 844 (1994)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104 (alteration in original)). A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test, comprised of an objective component and a subjective component. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *see also Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020) ("A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test.").

The objective component requires that the alleged deprivation in medical care be "sufficiently serious." *Salahuddin*, 467 F.3d at 279. A deprivation in medical care is sufficiently serious if (1) "the prisoner was actually deprived of adequate medical care" and (2) "the inadequacy in medical care is sufficiently serious." *Id.* at 279–80. The latter inquiry "contemplates

9

a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019); *see also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (holding that the medical need must be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain"). When medical treatment was provided, but a complaint alleges that treatment was delayed or inadequate, the relevant concern is the "particular risk of harm faced by a prisoner due to the challenged deprivation of care." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014). That is, the prisoner must state facts showing that the defendant "acted or failed to act while actually aware of a substantial risk that serious inmate harm will result." *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020).

With respect to Defendant Kim, Defendants argue that Plaintiff's allegations fail "to satisfy either the objective or subjective prongs of the test." (Def. Br. at 14). Plaintiff advances one non-time-barred theory: that the blood thinner prescribed by Defendant Kim caused Plaintiff to "experience[] excruciating pain" and "profuse[ly] bleed[]" following his March 10, 2021 oral surgery. (Compl. ¶¶ 25-26; Pl. Br. at 6). These alleged injuries, interpreting the *pro se* Complaint with the required liberality, satisfy the objective prong. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (explaining that inadequacy in medical care is "sufficiently serious" if it produced "extreme pain"); *cf. El-Massri v. New Haven Corr. Ctr.*, No. 18-CV-01249, 2018 WL 4604308, at *9 (D. Conn. Sept. 25, 2018) (noting that "additional allegations" by the plaintiff of "profuse bleeding" would have allowed the plaintiff to satisfy the objective prong of his deliberate indifference claim); *Davis v. McCready*, 283 F. Supp. 3d 108, 120 (S.D.N.Y. 2017) (holding that

10

the plaintiff's allegation that, among other things, he experienced "excruciating pain" satisfied the objective prong).

Defendants argue, for the subjective prong, that Plaintiff failed to allege that Defendant Kim acted with the required "wantonness" and alleged only a "disagreement over proper treatment." (Def. Br. at 14). To show that Defendant Kim acted with the requisite state of mind, Plaintiff alleges that Defendant Kim "was aware of the dangers of [P]laintiff taking the blood thinner prior to the oral surgery" but still prescribed the medication. (Pl. Br. at 6). This bare and conclusory allegation is insufficient to meet the subjective prong. At most, it shows that Defendant Kim was negligent in his treatment. But "[a]llegations of negligent treatment and misdiagnosis do not state a cause of action under the Eighth Amendment." *Harris v. Westchester Cnty. Med. Ctr.*, No. 08-CV-01128, 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011). To that end, although Plaintiff appears to disagree sharply with Defendant Kim's medical judgment, this fact is insufficient under the Eighth Amendment. *See, e.g.*, *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference."). Nor do Plaintiff's allegations that other treating physicians recommended that Plaintiff stop taking his blood thinner save his claim against Defendant Kim. *See Thurmond v. Thomas-Walsh*, No. 18-CV-00409, 2019 WL 1429559, at *8 (S.D.N.Y. Mar. 29, 2019) (holding that allegations about a "disagreement among Plaintiff's doctors as to what the correct medication for Plaintiff was" did "not give rise to an Eighth Amendment violation" (collecting cases)).

With respect to Defendant Bentevigna, Defendants argue that Plaintiff has failed to allege personal involvement. (Def. Br. at 15). "To state a claim under Section 1983, a plaintiff must allege facts showing defendants' direct and personal involvement in an alleged constitutional

deprivation." *Johnson v. City of Newburgh*, 690 F. Supp. 3d 224, 238 (S.D.N.Y. 2023). Plaintiff does not allege that Defendant Bentevigna participated in Plaintiff's medical treatment. He only alleges that he and Defendant Bentevigna "spoke regarding Kim ordering [P]laintiff to take the blood thinner." (Pl. Br. at 8; Compl. ¶¶ 31-32). This, "without more," is "insufficient" to show "personal involvement under [S]ection 1983." *Brown v. Cnty. of Westchester*, No. 22-CV-06146, 2024 WL 21937, at *9 (S.D.N.Y. Jan. 2, 2024); *see also Rodriguez v. Burnett*, No. 22-CV-10056, 2024 WL 1466880, at *9 (S.D.N.Y. Apr. 4, 2024) (holding that the plaintiff's allegation that "he informed defendant" of his complaints against the correctional medical staff was insufficient to plead personal involvement under Section 1983).[6]

Finally, as to Defendant Boyd, Defendants argue that Plaintiff failed to allege that the "correction officer[] . . . intentionally den[ied] or delay[ed] access to medical care." (Def. Br. at 19). The Second Circuit has held that "a deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians." *Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005). Taking the allegation in the Complaint as true, Plaintiff "was ordered" by his treating doctor "not to do any lifting" immediately after his hemorrhoidectomy surgery. (Compl. ¶ 27). Six days after this surgery, Plainttiff "made officer Boyd aware" of the "medical orders." (*Id.* ¶ 28). Defendant Boyd allegedly ignored Plaintiff's treating-physician's recommendation, ordering Plaintiff to "pick [] up" his mattress and "walk [it] through [a] metal detector." (*Id.*). After complying with Defendant Boyd's order, Plaintiff "felt a popping sensation"—causing "excruciating pain and discomfort." (*Id.*). Defendant Boyd's awareness of Plaintiff's treating-physician's recommendation is enough to sufficiently allege that

---

[6] To the extent Plaintiff, in the Complaint, challenges Defendant Bentevigna's medical judgment or suggests medical malpractice by him, such allegations are insufficient to establish a claim of deliberate indifference. *See Curry v. Kim*, No. 22-CV-04127, 2022 WL 2702744, at *4 (S.D.N.Y. July 11, 2022).

he acted with a culpable state of mind. *See Rodriguez v. Burnett*, No. 22-CV-02198, 2023 WL 3902705, at *12 (S.D.N.Y. June 7, 2023).

Accordingly, Plaintiff has plausibly alleged his claim for deliberate indifference to serious medical needs against Defendant Boyd. Therefore, Plaintiff's first and third claims for relief as to Defendant Boyd shall proceed. The fourth and sixth claims are dismissed as to Defendants Kim and Bentivegna.

### III.   Plaintiff's Fifth Claim for Relief: Failure to Supervise

Plaintiff asserts a claim for relief against Defendant Bentivegna for failure to adequately supervise Defendant Kim. (Compl. at 11). For the reasons stated above, Plaintiff's claim under Section 1983 for supervisory liability is time-barred to the extent that the claim is based on alleged acts before June 6, 2020.

Aside from the statute of limitations, Defendants argue that this claim fails to allege personal involvement in a Constitutional violation. (Def. Br. at 15). The Court agrees. There "is no special rule for supervisory liability" under Section 1983. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Rather, to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Id.* at 62; *see also Est. of King by & through King v. Annucci*, 693 F. Supp. 3d 310, 325 (N.D.N.Y. 2023) (explaining that the Second Circuit no longer recognizes Section 1983 liability against a supervisor for "gross negligence in supervising subordinates who commit unlawful acts"). Here, Plaintiff does not allege an underlying unconstitutional act by Defendant Bentivegna for his failure to supervise claim. His claim is instead grounded solely on Defendant Bentivegna's role as supervisor and his "failure to properly supervise [D]efendant Kim." (Compl. ¶ 32). *Cf. Sellers v. Andrea*, No. 3:22-CV-00585, 2022 WL 17830715, at *4 (D. Conn. Dec. 21, 2022) ("Supervisors cannot be held liable merely because they hold these positions.").

13

Accordingly, Plaintiff's fifth claim for relief is dismissed.

IV.     Plaintiff's Second Claim for Relief: First Amendment Retaliation

Plaintiff also presses a First Amendment retaliation claim against Defendants Kim and Bentivegna. (Compl. at 10; Pl. Br. 9-10).

Defendants argue that Plaintiff's First Amendment claim against Defendants Kim and Bentivegna for conduct from 2014-2019 (Compl. ¶¶ 5-21) is also time-barred by the applicable statute of limitations. (Def. Br. at 11-13, 18). The Court agrees. "First Amendment retaliation claims typically [] accrue at the time that the allegedly wrongful conduct occurred." *Albritton v. Morris*, No. 13-CV-03708, 2016 WL 1267799, at *10 (S.D.N.Y. Mar. 30, 2016) (collecting cases). Plaintiff alleges that Defendants Kim and Bentivegna made various verbal threats about his grievances before his hernia surgery in 2019. (*Id.* ¶¶ 10, 14). These alleged acts of retaliation occurred more than three years before June 6, 2020, and Plaintiff, again, does not allege or argue that he is entitled to an exception to the general statute of limitations period. Accordingly, Plaintiff's First Amendment claim is dismissed to the extent that the claim is based on alleged acts of retaliation before June 6, 2020.

As for Plaintiff's timely, retaliation allegations, a plaintiff asserting a First Amendment retaliation claim must establish that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. School Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). A plaintiff must allege, with respect to the third element, that the retaliatory motive was a "but for" cause of the adverse action. *See Barkai v. Mendez*, 629 F. Supp. 3d 166, 198 (S.D.N.Y. 2022). In other words, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

14

Plaintiff alleges that he filed "numerous grievances against Kim and Bentivegna for the denial of adequate, reasonable medical care for over a period of several years." (Pl. Br. at 9). As a result of the grievances, these Defendants allegedly "refus[ed] to provide reasonable medical care." (*Id.*). It is will-established that filing a grievance complaint is a constitutionally protected activity. *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir.2003). Plaintiff thus meets the first element of a retaliation claim.

Defendants argue that Plaintiff fails to allege sufficient facts to show that he suffered adverse action. (Def. Br. at 18). The Court agrees. To meet this element, Plaintiff advances one non-time-barred theory: that Defendants Kim and Bentivegna denied him adequate care. (Pl. Br. at 9-10). Although "a denial of medical evaluation, treatment, and adequate pain medication" is an adverse action, *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009), Plaintiff has not adequately alleged such a denial. As explained above, Plaintiff, at best, alleges a disagreement over the treatment provided by Defendant Kim. This falls short of an adverse action.

Accordingly, Plaintiff's second claim for relief is dismissed.

V.     Qualified Immunity

Finally, Defendants argue that Plaintiff's claims should be dismissed by operation of qualified immunity. (Def. Br. at 21).

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty*

15

*Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his action does not violate clearly established law is "objectively reasonable," he is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013); *see also al-Kidd*, 563 U.S. at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments. . . . [I]t protects all but the plainly incompetent or those who knowingly violate the law." (internal quotation marks omitted)). However, on a motion to dismiss, Plaintiff's entitlement to qualified immunity must "appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (internal quotation marks omitted).[7]

With respect to Defendant Boyd, at the time of his alleged incident with Plaintiff, "it was clearly established law in the Second Circuit that deliberately disregarding a recommendation" by a "treating physician could amount to an Eighth Amendment violation." *DiChiara v. Wright*, No. 06-CV-06123, 2011 WL 1303867, at *12 (E.D.N.Y. Mar. 31, 2011) (citing *Johnson*, 412 F.3d at 404). As stated *supra*, Plaintiff has sufficiently alleged a violation of that constitutional right as to Defendant Boyd. However, at this stage in litigation, the Court cannot find that Defendant Boyd is entitled to qualified immunity. Although Defendant Boyd is not entitled to qualified immunity on the face of the Complaint, "a factual basis for qualified immunity may arise as the proceedings develop." *Rodriguez*, 2024 WL 1466880, at *9 (quoting *Terranova v. New York*, 144 F. App'x

---

[7] The Court does not address Defendants Kim and Bentivegna's qualified immunity defense, having found that Plaintiff has failed to state a claim against them for either deliberate indifference or retaliation. *See Close v. Bedford Cent. Sch. Dist.*, No. 23-CV-04595, 2024 WL 3427213, at *14 n.23 (S.D.N.Y. July 16, 2024) ("Because all of Plaintiffs' federal claims fail on the merits, the Court need not address the parties' arguments concerning qualified immunity."); *Robles v. Khahaifa*, No. 09-CV-00718, 2012 WL 2401574, at *9 (W.D.N.Y. June 25, 2012) ("Given that no constitutional violation was found, this Court need not address defendants' alternative contention that they deserve qualified immunity for their actions." (emphasis deleted)).

143, 146–47 (2d Cir. 2005)). Defendant Boyd may revisit this argument after developing the record in discovery.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED as to the first and third claims for relief (deliberate indifference to serious medical needs) covering Defendant Boyd. Defendants' motion to dismiss is GRANTED as to Plaintiff's second (retaliation under the First Amendment), fourth, and sixth claims for relief (deliberate indifference to serious medical needs) as to Defendants Kim and Bentivegna; and fifth claim for relief (failure to supervise) as to Defendant Bentivegna.

Defendant Boyd is directed to file an answer to the Complaint within 14 days of the date of this Order. The Court will separately docket a Notice of Initial Conference.

The Clerk of Court is respectfully requested to: (1) terminate Kim and Bentivegna as Defendants; (2) terminate the pending motion (Doc. 22); and (3) mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated: White Plains, New York
November 25, 2024

PHILIP M. HALPERN
United States District Judge